UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

MIKE D. PIPHO,

    Plaintiff,                         Civil Action No. 14-11273
                                      Honorable Gershwin A. Drain
           v.                      Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 9, 10]**

**I.    INTRODUCTION**

Plaintiff Mike D. Pipho appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [R. 9, 10], which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that substantial evidence supports the Commissioner's final decision. For these reasons, the Court **RECOMMENDS** that the Commissioner's motion [R. 10] be **GRANTED**,

Pipho's motion [R. 9] be **DENIED**, and the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

II.   **BACKGROUND**

    A.   **Pipho's Background and Claimed Disabilities**

At the time of the administrative hearing, Pipho was a 49-year-old high school graduate who previously worked as a truck driver.  He alleges disability based on diabetes, diabetic neuropathy, high blood pressure, high cholesterol, depression, sleep apnea, essential tremor, and low back pain with sciatica.  [R. 6-6, Tr. 209, 251].  Pipho testified that he can stand for extended periods of time but can only sit for approximately 45 minutes before he has to get up due to his sciatica.  [R. 6-2, Tr. 79-80].  On a scale of one to ten, he said his pain from sciatica is a "heavy ten" and that his Norco and Percocet prescriptions take the pain down to an eight.  [*Id.*, Tr. 83-84].  Pipho claimed that his sleep apnea affects his ability to sleep well at night, which makes him drowsy during the day.  [*Id.* Tr. 84].  He said that due to his depression, there are some days where he stays in bed because he does not have "anything to do … [or] anywhere to go."  [*Id.*, Tr. 93-94].

    B.   **Procedural History**

Pipho filed his applications for DIB and SSI in May 2011, alleging disability as of April 25, 2011.  [R. 6-5, Tr. 170-80].  The claims were denied

initially on July 1, 2011, and Pipho filed a timely request for an administrative hearing. [R. 6-4, Tr. 119-26, 129]. Pipho and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on October 23, 2012. [R. 6-2, Tr. 74-98]. In a November 14, 2012 written decision, the ALJ found Pipho not disabled. [*Id.*, Tr. 58-73]. On January 31, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review. [*Id.*, Tr. 1-7]. Pipho filed for judicial review on March 27, 2014. [R. 1].

### C. The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §

404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential process, the ALJ concluded that Pipho was not disabled.  At step one, she found that Pipho had not engaged in substantial gainful activity since his alleged onset date.  [R. 9-2, Tr. 63].  At step two, she concluded that Pipho had severe impairments of diabetes mellitus and depression, along with the following non-severe

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

impairments: obesity, sleep apnea, sciatica, hearing loss, and vision problems. [*Id.*]. At step three, the ALJ compared Pipho's impairments to Listings 9.00, 9.08, and 12.04 and determined that his impairments did not meet or medically equal the listings, either singly or in combination. [*Id.*, Tr. 64]. In making this comparison, she found that Pipho's mental impairment resulted in a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties with concentration, persistence or pace ("CPP"); and no extended episodes of decompensation. [*Id.*, Tr. 64-65].

Between steps three and four, the ALJ assessed Pipho's RFC, finding him capable of performing medium work "except he can only frequently stoop, crouch, and crawl … [and he] is limited to performing simple, routine, repetitive tasks due to depression." [R. 6-2, Tr. 65]. The ALJ explained that she limited Pipho to medium work with only frequent stooping, crouching and crawling due to his diabetes with neuropathy. [*Id.*, Tr. 66]. She further explained that:

> Although the evidence establishes underlying medical conditions capable of producing some limitations, the substantial evidence of record does not confirm disabling limitations arising from these impairments, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations. The undersigned finds that the preponderance of credible evidence establishes that the

claimant experienced no greater than, at most, mild to moderate functional limitations upon his ability to perform basic work activities as described in 20 CFR 404.1521(b) and 20 CFR 921(b).

[R. 6-2, Tr. 67].

At step four, the ALJ found that Pipho could not perform any past relevant work. [*Id.*]. At step five, the ALJ determined that based on Pipho's age, education, work experience and RFC, there are jobs that exist in significant numbers that he can perform – including as a packager, an automobile detailer, and a production helper. [*Id.*, Tr. 68]. In so finding, the ALJ relied on the testimony of the VE. [*Id.*].

### III. ANALYSIS

#### A. Standard of Review

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

6

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723; *Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

    **B.**    **The ALJ's Credibility Findings**

Pipho argues that the ALJ erred in finding his allegations regarding the intensity, persistence and limiting effects of his symptoms not entirely credible. Although credibility determinations of witnesses are within the

7

province of the ALJ, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Here, the ALJ cited to examples in the record that undermined Pipho's allegations regarding the intensity, persistence and limiting effects of his symptoms. Specifically, she noted that despite complaining of disabling symptoms, Pipho spends time volunteering, including at a food bank and with the road commission; performs all of his chores around the house, including cooking entire meals and doing yard work; goes fishing while either sitting or standing; enjoys working on model cars; can drive; and has a history of noncompliance with his diabetes medication. [R. 6-2, Tr. 64-65, 67, 79-81, 86-89; R. 6-6, Tr. 195, 217-19; R. 6-7, Tr. 267, 314 ]. Pipho described himself as always doing something, which was echoed by his friend in a third-party functional report. [R. 6-2, Tr. 87-88, R. 6-6, Tr. 193, 216]. Thus, there was evidence in the record to support the ALJ's finding that the credible evidence revealed that Pipho "experienced no greater than, at most, mild to moderate functional limitations upon his ability to perform basic work activities." [R. 6-2, Tr. 67]. See *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (the ALJ "justifiably considered [plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain").

Pipho argues that the evidence the ALJ relied on to find he had a history of noncompliance with taking his medication was inapplicable because it was from three months before the alleged onset date. This is incorrect. First, the Commissioner was obligated to develop Pipho's complete medical history for at least the twelve months preceding the month he applied for benefits. See 20 C.F.R. §§ 404.1512(d), 416.912(d). Here, the evidence the ALJ cited is from just three months before Pipho applied for benefits. [R. 6-2, Tr. 67; R. 6-7, Tr. 267]. Moreover, other evidence in the record from May 2011 and March 2012 supports the ALJ's finding that Pipho had a history of noncompliance with taking his medication, and that that is what caused his increased blood sugar levels. [R. 6-7, Tr. 277, 333].

For these reasons, the ALJ's credibility findings are supported by substantial evidence.

### C.    The ALJ's Step-Two Findings

Pipho argues that the ALJ erred at step two by failing to find that his sciatica, tremors, and diabetic neuropathy were severe impairments. The Court disagrees.

A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

The claimant bears the burden of presenting medical evidence that supports the claimed severe impairments; a diagnosis alone is insufficient. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)

Here, the only objective medical evidence regarding his sciatica in the record before the ALJ was patient education materials; there is no medical evidence supporting a finding that his diagnosis of sciatica was severely limiting.[2] [R. 6-2, Tr. 64; R. 6-7, Tr. 347]. Similarly, Pipho's doctor's diagnosis of "essential tremor" after observing the "presence of a slight bilateral hand tremor when [Pipho] holds his arms out in front of him for [greater than] 20 sec[ond]s" is not evidence that he is significantly limited in his ability to do work. [R. 6-7, Tr. 339]. Although Pipho's testimony indicated these conditions severely limit him, [R. 6-2, Tr. 83-85, 90][3], the Court has already determined that the ALJ correctly found that his daily

---

[2] Pipho relies on evidence dated after the ALJ's November 14, 2012 decision for support of his argument that the ALJ erred in finding his sciatica non-severe. [R. 9, PgID 395-96, citing R. 6-2, Tr. 50, 52, 54-56]. However, because that evidence was not in the record before the ALJ, the Court cannot consider it in determining whether the ALJ's decision was supported by substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

[3] Notably, Pipho testified at first that he had no problems with writing, but later that he could not write due to tremors. [R. 6-2, Tr. 80, 90]. He fails to explain his inconsistent testimony.

activities deem his testimony not entirely credible.

Pipho's complaint that the ALJ did not find his diabetes neuropathy to be a severe impairment is not true. The ALJ found that his diabetes mellitus was a severe impairment, and that: "Due to [his] diabetes mellitus *with neuropathy*, [Pipho is] limited … to work at the medium exertional level, with only frequent stooping, crouching, and crawling." [R. 6-2, Tr. 63, 66 (emphasis added)]. This complaint is wholly without merit.

### D.   The ALJ's RFC Determination

Pipho argues that the ALJ erred by only limiting him to simple, routine, repetitive tasks after finding at step three that he had moderate CPP difficulties. He says the ALJ should have included CPP-specific limitations in the RFC determination and in the hypothetical questions to the VE.

At the end of her step-three analysis, the ALJ explained that the limitations in the "paragraph B" criteria, including the moderate CPP finding, were not an RFC assessment, but are instead used to rate the severity of the mental impairments at steps two and three, and that her RFC assessment incorporated the degree of Pipho's mental impairments. [R. 6-2, Tr. 65]. Based on this language, the Court's review narrows to whether substantial evidence supports the ALJ's finding that, despite his moderate

difficulties in CPP, Pipho could perform "simple, routine, repetitive tasks" on a sustained basis. See *Southworth v. Comm'r of Soc. Sec.*, No. 12-12243, 2013 WL 3388946, at * 15-17 (E.D. Mich. July 8, 2013).

The ALJ's RFC determination limiting Pipho to simple, routine, repetitive tasks is supported by substantial evidence. As the ALJ found, the record demonstrates that Pipho's depression is rooted in the loss of his job, and the lack of purpose occasionally causes him to not want to get out of bed. [R. 6-2, Tr. 66, 86-88, 93-94; R. 6-7, Tr. 316, 323]. The record also shows that Pipho's providers consistently observed that he presented with orientation times three, intact comprehension, pleasant mood, logical thoughts, and good insight and judgment; and they reported that he denied hallucinations, high stress, poor concentration, mood swings, and suicide thoughts. [R. 6-7, Tr. 316, 319, 333]. Pipho fails to present medical evidence demonstrating that his mental impairment significantly limits his ability to perform basic job functions, and he fails to raise any specific limitation the ALJ should have included. Thus, the ALJ's RFC assessment is supported by substantial evidence.

Moreover, the record reflects that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible. See *Casey v. Sec'y of Health & Human Servs.*, 987

F.2d 1230, 1235 (6th Cir. 1993) (when posing a hypothetical to a VE, an ALJ is required to incorporate only those limitations accepted as credible).

Pipho also argues that the ALJ erred in her RFC determination because it is the same as the state agency single decision maker's ("SDM") RFC. However, the ALJ does not cite to the SDM's RFC and there is no evidence she relied on the SDM's findings in anyway. The ALJ discussed the evidence, including the effect of Pipho's impairments, and made specific findings supporting her conclusion that Pipho's diabetes with neuropathy limited him to medium work with only frequent stooping, crouching and crawling, and his depression limited him to simple, routine, repetitive tasks. The ALJ did not commit error.

### E. A Sentence Six Remand is Not Warranted

Last, Pipho argues that the Court should remand the case "pursuant to the sixth sentence of 42 U.S.C. § 405(g) for consideration of new and material evidence, which was provided to the Appeals Council as soon as it came to light." [R. 9, PgID 404].

The Court may remand a case to the Commissioner where a plaintiff establishes that new evidence that is material exists, and that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "Evidence is 'material' if it 'would

likely change the Commissioner's decision.'" *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir. 2012) (citation omitted). To establish "good cause," a plaintiff must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted).

Assuming, but not deciding, that good cause exists, the new evidence presented that relates to Pipho's sciatica is not material. The ALJ decided the case through November 14, 2012, but all of the new evidence Pipho presents relates to a period that falls after the date of the decision and concerns Pipho's condition at that point in time. [R. 6-2, Tr. 9-24, 32-56, 61-69]. The Appeals Council concluded that the evidence "is about a later time … it does not affect the decision about whether [Pipho was] disabled beginning on or before November 14, 2012," and indicated that Pipho would have to file a new application for it to determine if he became disabled after that date. [*Id.*, Tr. 2]. The Court agrees, and therefore finds that a remand pursuant to sentence six of § 405(g) is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Pipho's Motion for Summary Judgment [R. 9] be **DENIED**, the Commissioner's

14

Motion [R. 10] be **GRANTED**, and this case be **AFFIRMED**.

                                         s/Elizabeth A. Stafford
                                         ELIZABETH A. STAFFORD
                                         United States Magistrate Judge

Dated: June 16, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after

15

service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2015.

                                          s/Marlena Williams
                                          MARLENA WILLIAMS
                                          Case Manager